**MANDELBAUM, SALSBURG, P.C.**
Jacqueline Greenberg Vogt, Esq.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
*Attorneys for Petitioners*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS: COMMERCIAL DIVISION

| | |
|---|---|
| MUHAMED T. MIR, SALMAN RIAZ and ROCKAWAY COMMUNITY CARE CORP. D/B/A REX PHARMACY,<br><br>Petitioners,<br><br>v.<br><br>ABDUL NAZ and JOHN DOES 1-10,<br><br>Respondents. | **Index No.** _____<br><br><br>**VERIFIED PETITION** |

Petitioners Muhammad Tahhur Mir ("**Mir**"), Salman Riaz ("**Riaz**") and Rockaway Community Care Corp., d/b/a Rex Pharmacy ("**RCC**" or "**Rex Pharmacy**" or the "**Pharmacy**"), by way of Verified Petition against Respondent Abdul Naz ("**Naz**"), allege and say:

**Identification of the Parties and Background**

1. Mir and Riaz are successful businessmen who own numerous pharmacies in New York and New Jersey.

2. Naz is a pharmacist who agreed to acquire a minority interest equal to twenty-five percent (25%) of the issued and outstanding shares in Rex Pharmacy with Mir and Riaz acquiring a combined interest of seventy-five percent (75%) (37.5% each) in RCC.

### The Purchase of Rex Pharmacy

3. In or about late 2019, Riaz and Mir were introduced to the owner of Rex Pharmacy located in Jamaica, Queens, New York (the "**Premises**") by its landlord, Syed Rahman, because the landlord knew that the owner was interested in selling the Pharmacy and that Riaz and Mir owned other pharmacies.

4. On or about December 30, 2019, Mir notified his and Riaz's attorney that they would be purchasing the Pharmacy and requested that the attorney prepare an asset purchase agreement. See Exhibit "**A**" annexed hereto.

5. By e-mail, dated January 18, 2020, Mir also informed counsel to file for S Corporation status and told the attorney that they already had an EIN. See Exhibit "**B**" annexed hereto.

6. To properly operate the Rex Pharmacy business, Riaz and Mir decided to become the majority shareholders and to have someone that hopefully was trustworthy to become a minority shareholder and also operate the Pharmacy on a day-to-day basis.

7. Having had a business relationship with Naz previously, with Naz having been employed by them or one of their entities as a pharmacist, Riaz and Mir offered Naz a twenty-five percent (25%) interest in Rex Pharmacy with Riaz and Mir evenly owning the remaining seventy-five percent (75%).

8. It was also decided, and agreed upon by Riaz, Mir and Naz that the initial investment, or buy-in, would total $720,000, with Naz paying $180,000 of that amount for his 25% interest and Riaz and Mir paying a total of $540,000 for their 37.5% interests. This is documented in a calculation prepared by Naz and sent by him to Petitioners. See Exhibit "**C**" annexed hereto.

9. Thereafter, Riaz and Mir negotiated the acquisition at an agreed upon price of $330,000 plus the cost of inventory on hand, negotiated the terms of the lease with the Pharmacy's landlord, and took other steps to close title on the transaction, including sending to their attorney a breakdown of the inventory amount that was to be paid by the purchaser at the closing. See Exhibit "D" annexed hereto.

10. In connection with the acquisition, Riaz and Mir made all of their contributions to Rex Pharmacy for their buy-ins and to pay other expenses of the business. They deposited a total of $450,000 in three separate payments of $320,000, $2,000 and $128,000. See Exhibit "E" annexed hereto.

11. Similarly, on or about January 14, 2020, Naz paid $30,000 toward his buy-in amount, Naz paid another $40,000 on March 11, 2020, sent a text on or about April 20, 2020 confirming his twenty-five percent (25%) interest in Rex Pharmacy and that he would pay a total of $150,000 for that minority interest, paid Riaz $15,000 by check on or about July 21, 2020 and Mir $15,000 by cash on or about July 21, 2020 toward his buy-in. See Exhibit "F" annexed hereto.

12. It was understood by the parties that, although Mir and Riaz would own a majority interest in Rex Pharmacy, various applications and other governmental filings would be made by Naz as a principal in the Pharmacy.

13. The title closing on the purchase of Rex Pharmacy occurred on or about March 12, 2020.

### As Majority Owners, Mir and Riaz Handle the Financial aspects of Operating Rex Pharmacy

14. Subsequent to the closing, Mir opened a bank account for Rex Pharmacy at Chase and obtained a debit card for himself to access the account, and confirmed when opening the

account that he was an owner of the business. See Exhibit "**G**" annexed hereto.

15. Mir also listed himself as an owner when completing other forms relating to the business.

16. Similarly, Mir opened an account in his name for Rex Pharmacy with regard to the Pharmacy's telephone and internet services. See Exhibit "**H**" annexed hereto.

17. Mir and Riaz also had corporate documents prepared by their counsel, including a shareholder agreement reflecting the correct percentage ownership for each shareholder in the Pharmacy and an employment contract for Naz, and sent those documents to him.

18. When Petitioners did not receive those documents back from Naz, Mir e-mailed Naz on or about September 7, 2020, asking him to execute those agreements, but again Naz ignored the request.

19. Subsequently, on or about December 11, 2020, the subject agreements were again sent, but again they were ignored by Naz. See Exhibit "**I**" annexed hereto.

20. Mir and Riaz continued to push Naz to sign the shareholder and employment agreements and were becoming concerned as to his true intentions.

21. By e-mail, dated July 7, 2021, Mir again forwarded, among other things, the shareholder agreement and an employment agreement to Naz. See Exhibit "**J**" annexed hereto. Naz did not respond.

22. By e-mail, dated on or about September 7, 2021, Mir again sent the shareholder agreement, asked to schedule a time to meet with Naz to execute the document and reminded Naz that he still owed $50,000 for his ownership interest in Rex Pharmacy. See Exhibit "**K**" annexed hereto.

23. Even without these documents, however, it is clear that Mir and Riaz were not

lenders, but shareholders in RCC, having handled and negotiated the purchase of the Pharmacy, made financial contributions for 75% of the issued and outstanding shares related to the business, opened various accounts for RCC including its bank account (see Exhibit "G" annexed hereto), its Best Rx account (see Exhibit "L" annexed hereto), its telephone and internet account (see Exhibit "H" annexed hereto), established a payroll account with ADP (see Exhibit "M" annexed hereto), filed the certificate of incorporation with the State (see Exhibit "N" annexed hereto), received closing documents from their counsel relating to their purchase of the Pharmacy (see Exhibit "O" annexed hereto) and negotiated and were sent the lease for the Pharmacy's premises (see Exhibit "P" annexed hereto).

24. Moreover, subsequent to the closing, Mir and Riaz were introduced to the employees of the seller as the purchasers of the Pharmacy and, thereafter, whenever employees had issues with regard to their employment and Naz did not handle those issues to their satisfaction, the employees knew to contact Mir and/or Riaz.

25. But that is not all. There were ongoing communications between Mir, Riaz and Naz on WhatsApp Messenger ("**WhatsApp**"), a centralized instant messaging service owned by Facebook, throughout the time the parties were pursuing the purchase of Rex Pharmacy's assets, after the acquisition and up and until Naz locked Mir and Riaz out of the premises and took other wrongful steps to convert Rex Pharmacy's assets. The chats on WhatsApp make crystal clear that Mir and Riaz were not lenders but owners of the business.

26. By way of example, but not limitation, there is an entry on January 28, 2020 that "Rex [Pharmacy]is the one **we** are buying" (emphasis added), an entry on October 6, 2020 in which Naz asks Plaintiffs whether he should order "new labels with **our** corporate name" (emphasis added), an entry on June 30, 2021 in which Plaintiffs tell Naz that if he doesn't "like

his **partners** then let us sit and resolve" the dispute (emphasis added), an entry on June 21, 2021 stating that it has been three weeks since the parties met but Naz has not shared the ADP payroll account with them, an entry on July 12, 2021 asking Naz when he would see his attorney, an entry on August 13, 2021 discussing Naz completing the shareholder agreement, and entries on September 30, 2021 concerning Naz not opening the Pharmacy and changing the locks to the premises. See Exhibit "**Q**" annexed hereto.

### The Lockout

27. On September 28, 2021, at approximately 6 p.m. Naz asked Mir and Riaz to leave the pharmacy and, after handing them a card for his attorney, directed them to speak to his attorney.

28. On or about September 29, 2021, at approximately 1 p.m., Mir and Riaz went to the Pharmacy and Naz demanded that they leave.

29. Mir promptly called 911 and, when the police arrived at the Pharmacy, employees confirmed that Mir and Riaz were owners and the police then notified Naz that he could not remove them from the Premises, but indicated that other issues would need to be resolved in court.

30. At or about that time, Naz decided to physically lock Mir and Riaz out of the business, changed the locks, denied them access to corporate records, changed the password for the e-mail server and removed Mir from the bank account belonging to RCC. See Exhibit "**R**" annexed hereto.

31. When Mir and Riaz later went to the pharmacy to confront Naz, the pharmacy was closed even though it was supposed to be open for business at that time.

32. Similarly, when Mir and Riaz thereafter attempted to access the Premises when

the Pharmacy was open, the door immediately would be locked at Naz's direction to deny them access and the Pharmacy closed.

33. Not only did this preclude Mir and Riaz from entering into the Pharmacy of which they own 75%, it also interfered with customers being able to fill or pick-up their prescriptions.

34. Naz has caused the Pharmacy to close for business every day since that time and Petitioners have advised the Pharmacy's employees that they will be paid and to wait until Petitioners are able to obtain the Court's assistance to reopen the Pharmacy.

35. Rex Pharmacy fills approximately three hundred (300) prescriptions per day and, by closing the Pharmacy, Naz is interfering with customers receiving their needed medications, exposing them to a significant health risk, and interfering with customers being able to transfer their prescriptions to another pharmacy to be filled.

36. Due to this retaliatory closure of the Pharmacy by Naz, the Pharmacy is suffering immediate and irreparable harm in that the Pharmacy's valuable referring providers/prescribers have no choice but to refer their patients to competitor pharmacies for their prescriptions. Once referring providers/prescribers and/or patients begin to look to the Pharmacy's competitors, the Pharmacy will lose significant business that it will not be able to replace, causing significant harm to the Pharmacy's good will which was a key component in the decision to purchase Rex Pharmacy. Without injunctive relief, such losses are highly likely to cause the Pharmacy's demise.

37. By e-mail, dated September 29, 2021, Naz's attorney claimed that the payments made by Naz to Mir and Riaz were repayment for a loan and, therefore, Mir and Riaz have no ownership interest in Rex Pharmacy. See Exhibit "S" annexed hereto.

38. The overwhelming evidence to the contrary demonstrates that Mir and Riaz are

the majority owners of Rex Pharmacy and that Naz's defense is utterly frivolous.

## FIRST COUNT
### (Declaratory Judgment and Equitable Relief)

39. Petitioners repeat and reallege all of the aforesaid allegations as if same were fully set forth herein at length.

40. Despite not being entitled to unilateral control over Rex Pharmacy, Naz is currently operating the business as if he is the sole owner of the Pharmacy when he owns only twenty-five percent (25%), and he is otherwise oppressing Petitioners, converting the Pharmacy's assets and otherwise damaging the business by his actions.

41. This litigation presents a real case or controversy requiring the Court to settle disputed legal rights.

42. Petitioners are entitled to a judgment declaring and adjudging that Mir and Riaz own 75% and Naz 25% of Rex Pharmacy and otherwise declaring and adjudging their respective rights with regard to the business.

43. As a direct and proximate result of Naz's wrongful actions and/or inactions, as aforesaid, Petitioners are also entitled to temporary and, thereafter, preliminary and permanent injunctive relief to protect the Pharmacy, avoid the destruction of its goodwill and to protect the interests of the community and customers who rely on Rex Pharmacy for their medications and other healthcare needs.

## SECOND COUNT
### (Conversion)

44. Petitioners repeat and reallege all of the foregoing allegations as if same were fully set forth herein at length.

45. Naz has taken the Pharmacy's property, removed the Pharmacy's monies from its

bank accounts and otherwise converted assets belonging to Rex Pharmacy.

46. As a direct and proximate result thereof, Naz will be unjustly enriched to the Pharmacy's and Petitioners' detriment should he not be ordered to return all property taken and to repay all monies belonging to the Pharmacy.

47. Naz intended to interfere with the property and funds of Rex Pharmacy to the exclusion of the Pharmacy and the Pharmacy's right to possess all of said property.

48. Naz's conduct was willful, wanton, malicious and/or in reckless disregard of the Pharmacy's rights.

### THIRD COUNT
### (Breaches of Contract)

49. Petitioners repeat and reallege all of the foregoing allegations as if same were fully set forth herein at length.

50. Mir, Riaz and Naz entered into an agreement whereby and whereunder Mir and Riaz were to acquire a combined 75% interest in Rex Pharmacy and Naz a 25% interest.

51. Naz's own documents confirm that this was the agreement as does other, overwhelming evidence.

52. Naz's contention that Mir and Riaz were simply lenders and that he owns all of Rex Pharmacy is patently absurd and in breach of the agreement he had when Mir and Riaz offered to give him the opportunity to purchase a 25% interest in the business.

53. Moreover, Naz never paid for his 25% interest in full and Naz's recent conduct, barring the majority owners from the Premises, converting the Pharmacy's assets and otherwise excluding them from the business also is in direct violation of the terms of the parties' agreement.

54. As a result of Naz's conduct, as aforesaid, Petitioners have suffered substantial

damages and Naz has placed the business in significant risk of shutting down permanently.

### FOURTH COUNT
### (Breaches of Fiduciary Duty)

55. Petitioners repeat and reallege all of the foregoing allegations as if same were fully set forth herein at length.

56. As a shareholder, Naz owes fiduciary duties to shareholders Mir and Riaz.

57. Naz has breached the fiduciary duties owed to Mir and Riaz as a result of his aforesaid conduct including, among other things, locking them out of the premises, converting assets and otherwise mistreating the majority shareholders of the Pharmacy.

58. As a direct and proximate result of Naz's breaches of fiduciary duty, Petitioners have been damaged.

59. The aforesaid conduct of Naz was willful, wanton, malicious and/or in reckless disregard of Petitioners' rights.

**WHEREFORE,** Petitioners demand judgment on this Verified Petition against Respondent Abdul Naz as follows:

A. Entering a temporary, preliminary and eventually a permanent injunction against Naz for the relief set forth in the order to show cause;

B. On the First Count for Declaratory Judgment and Equitable Relief, declaring and adjudging that Mir and Riaz are at least 75% owners of the outstanding and issued shares of Rex Pharmacy and that Naz owns no more than a 25% interest in the business;

C. On the Second Count for Conversion, for an Order directing Naz to return of all property taken from the Pharmacy and repaying all monies belonging to the business;

D. On the Third Count for Breaches of Contract, for damages in an amount to be determined at trial but believed to be in excess of $750,000, plus interest thereon;

E. On the Fourth Count for Breaches of Fiduciary Duty, for damages in an amount to be determined at trial but believed to be in excess of $ 750,000, plus interest thereon;

F. For punitive damages;

G. Together with reasonable attorneys' fees and costs; and

H. Such other and further relief as the Court deems just, necessary and proper.

**MANDELBAUM, SALSBURG, P.C.**

By: _____
Jacqueline Greenberg Vogt
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
*Attorneys for Petitioners*

Dated: October 5, 2021

## VERIFICATION

STATE OF NEW JERSEY   )
                                        ss:
COUNTY OF ESSEX       )

MUHAMMAD TOHHUR MIR being duly sworn, hereby verifies under oath and says:

I am the one of the Petitioners in the above action. I have read the foregoing Complaint and know the contents thereof. The same is true to the best of my knowledge, except as to matters alleged on information and belief, and that as to those matters, I believe them to be true.

*Muhammad T. MIR*
NJ. ID. M458856883305911

Sworn and subscribed before me this 5TH day of October, 2021.

_____
Notary Public

WAQAR AHMED
Notary Public - State of New York
NO. 01AH6394057
Qualified in Nassau County
My Commission Expires Jul 1, 2023